IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES FIRE INSURANCE COMPANY, | ) ) |
| | ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| ESTATE OF JAMES CAMPBELL, ET AL., | ) ) |
| | ) |
| Defendants. | ) ) |
| _____ | ) |

CIVIL NO. 11-00006 LEK-KSC

**ORDER GRANTING IN PART AND DENYING IN PART THE
ESTATE OF JAMES CAMPBELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT
REGARDING POLICY TERMS "SUIT," "DAMAGES," AND "PROPERTY DAMAGE";
DENYING THE ESTATE OF JAMES CAMPBELL'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING QUALIFIED POLLUTION EXCLUSION
AND OCCURRENCE DEFENSES; AND DENYING UNITED STATES FIRE
INSURANCE COMPANY'S COUNTER-MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: NO DUTY TO INDEMNIFY
<u>ESTATE OF JAMES CAMPBELL BECAUSE NO "SUIT" AND NO "DAMAGES"</u>**

Before the Court are: 1) Defendant Estate of
James Campbell's ("Campbell Estate") Motion for Partial Summary
Judgment Regarding Policy Terms "Suit," "Damages," and "Property
Damage" ("Suit Motion"), filed on June 6, 2011; [dkt. no. 65;] 2)
Campbell Estate's Motion for Partial Summary Judgment Regarding
Qualified Pollution Exclusion and Occurrence Defenses
("Occurrence Motion"), filed on June 6, 2011; [dkt. no. 70;] and
3) Plaintiff United States Fire Insurance Company's ("U.S. Fire")
Counter-Motion for Partial Summary Judgment Re: No Duty to
Indemnify Estate of James Campbell Because No "Suit" and No

"Damages" ("Counter-Motion"), filed on November 14, 2011 [dkt.
no. 120].  U.S. Fire filed its memorandum in opposition to the
Occurrence Motion on November 14, 2011.[1]  [Dkt. no. 116.]  On
November 21, 2011, Campbell Estate filed its memorandum in
opposition to the Counter-Motion and its reply in support of the
Occurrence Motion.  [Dkt. nos. 127, 130.]  U.S. Fire filed its
reply in support of the Counter-Motion on November 28, 2011.
[Dkt. no. 134.]

These matters came on for hearing on December 5, 2011.
Appearing on behalf of Campbell Estate were Patricia McHenry,
Esq., and Amanda Jones, Esq., and appearing on behalf of U.S.
Fire were Jennifer Kokes, Esq., and Patricia Wall, Esq.  Also
present were Wesley Ching, Esq., on behalf of Sentinel Insurance
Company, Ltd. and Pacific Insurance Co. Ltd., and Kenneth Sumner,
Esq., by telephone, and Tracie Kobayashi, Esq., on behalf of
American Home Assurance Company.  After careful consideration of
the motions, supporting and opposing memoranda, and the arguments
of counsel, the Court rules as follows for the reasons set forth
below: Campbell Estate's Suit Motion is HEREBY GRANTED IN PART
AND DENIED IN PART; Campbell Estate's Occurrence Motion is
DENIED; and U.S. Fire's Counter-Motion is DENIED.

---

[1] The memorandum in support of the Counter-Motion is also
U.S. Fire's opposition to Campbell Estate's Suit Motion.

## BACKGROUND

I.   **Factual Background**

In December 1973, Campbell Estate leased the property in question, 91-476 Komohana Street in Campbell Industrial Park ("the Site"), to Griffin Forest Industries, Inc. ("Griffin"). Griffin subleased and later assigned the lease to Chem-Wood Treatment Company ("Chem-Wood").[2]  Chem-Wood operated a wood treatment business on the Site from 1973 through October 1988. As part of its operations, Chem-Wood used copper chromated arsenic and pentachlorophenol, as well as other chemicals. [Campbell Estate Suit CSOF Nos. 1-3; U.S. Fire's Response to Campbell Estate Suit CSOF, filed 11/14/11 (dkt. no. 122) ("U.S. Fire Responsive Suit CSOF"), at ¶ 1 (admitting, *inter alia*, Campbell Estate Suit CSOF Nos. 1-3).]  Campbell Estate asserts that, as a result of Chem-Wood's waste management practices, accidental spills, and drippage from wet, treated wood, these chemicals were released onto the Site and contaminated the Site's soil and groundwater, as well as surrounding properties. [Campbell Estate Suit CSOF Nos. 4-5.]

---

[2] According to Campbell Estate, in December 1989, Campbell Estate sold the Site to Chem-Wood via a 1031 Exchange.  [Campbell Estate's Separate & Concise Statement of Material Facts in Supp. of Suit Motion, filed 6/6/11 (dkt. no. 66) ("Campbell Estate Suit CSOF"), Decl. of Carol Quesinberry ("Quesinberry Decl."), at ¶¶ 2-3, 5.]

In a letter dated November 24, 2008, the United States Environmental Protection Agency ("EPA") notified Campbell Estate that, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), as a previous owner and/or operator of the Site, Campbell Estate was a potentially responsible party ("PRP") required to perform clean-up actions and/or to pay costs that the EPA incurred in cleaning up contamination at the Site ("PRP Letter").[3]  [Campbell Estate Suit CSOF Nos. 6-7; U.S. Fire Responsive Suit CSOF at ¶ 1 (admitting, *inter alia*, Campbell Estate Suit CSOF Nos. 6-9).]

The EPA directed Campbell Estate to undertake clean-up operations to address Site contamination that occurred during Chem-Wood's operations.  The EPA's clean-up requirements are set forth in its December 2009 Final Remedy Decision ("FRD").[4]  The FRD required, *inter alia*: clean-up of soil contamination at the Site and at surrounding properties; testing, analysis, and monitoring of groundwater at and around the Site; removal of contaminants from the groundwater; and implementation of land use controls.  [Campbell Estate Suit CSOF Nos. 8-9; U.S. Fire Responsive Suit CSOF at ¶ 1.]  In August 2010, Campbell Estate,

---

[3] The PRP Letter is attached to the Campbell Estate CSOF as Exhibit F to the Quesinberry Declaration.  [Dkt. no. 66-19.]

[4] The FRD is attached to the Campbell Estate Suit CSOF as Exhibit J to the Declaration of David Franzel ("Franzel Declaration").  [Dkt. nos. 69-2 to 69-5.]

Weston Solutions, Inc. (the current owner of the Site), and the EPA entered into an Administrative Order on Consent for Final Corrective Measures ("AOC"), which implemented the remedies ordered in the FRD.[5] [Campbell Estate Suit CSOF No. 10; U.S. Fire Responsive Suit CSOF at ¶ 3 (admitting portions of Campbell Estate Suit CSOF No. 10).]

Industrial Indemnity Company and Industrial Insurance of Hawaii, Ltd. (collectively "Industrial Indemnity") issued several insurance policies to Campbell Estate covering the period from May 1979 to April 1987 ("the Policies"). U.S. Fire is the successor by novation to the Policies. [Campbell Estate Suit CSOF Nos. 11-12; U.S. Fire Responsive Suit CSOF at ¶ 1 (admitting, *inter alia*, Campbell Estate Suit CSOF Nos. 11-12).] Campbell Estate states that it tendered the defense of the EPA Actions[6] to U.S. Fire under the Policies. [Campbell Estate Suit CSOF No. 17; U.S. Fire Responsive Suit CSOF at ¶ 4 (admitting certain facts in Campbell Estate Suit CSOF No. 17).] U.S. Fire "agree[d] to participate in the defense of the Estate under Policy Nos. LV806-9513, LV812-0551, MP817-7108 and SV859-2335, subject to a complete reservation of all rights and defenses[.]"

---

[5] The AOC is attached to the Campbell Estate Suit CSOF as Exhibit H to the Franzel Declaration. [Dkt. nos. 68-4 to 68-7.]

[6] Campbell Estate refers to the PRP Letter, the FRD and the AOC collectively as "the EPA Actions". [Mem. in Supp. of Suit Motion at 9.]

[Campbell Estate Suit CSOF, Decl. of Patricia J. McHenry ("McHenry Suit Decl."), Exh. K (letter dated 10/13/09 to Campbell Estate's counsel from U.S. Fire's counsel, Latent/CD Claims Unit).]  U.S. Fire also denied the request for a defense: under "alleged Policy No. LC806-9720" because U.S. Fire could not locate any evidence of that alleged policy, and Campbell Estate did not provide any evidence or information about it; under Policy No. SV877-2416 pursuant to that policy's total pollution exclusion; and under Policy Nos. LC812-0429 and LC817-7271 because those were umbrella policies where U.S. Fire would provide a defense under primary polices.  [Id.]

U.S. Fire filed the instant action on January 4, 2011, primarily seeking a declaratory judgment that it has no duty to defend or indemnify Campbell Estate for the costs related to the environmental contamination at the Site.  The principle arguments U.S. Fire presents in support of its position that there is no duty to defend or indemnify in this matter ("the coverage defenses") are set forth in paragraphs 30.(a) through (h) of the Complaint.  [Complaint at pgs. 9-10.]  If the Court ultimately determines that U.S. Fire is liable to Campbell Estate for any amount, U.S. Fire seeks contribution from Campbell Estate's other insurers, which U.S. Fire has named as co-defendants. Jurisdiction in this case is based on diversity.  [Id. at ¶ 2.]

Campbell Estate's Suit Motion addresses the following coverage defenses:

> (a)  The costs incurred and paid or to be incurred by [Campbell] Estate do not constitute "sums which the Insured shall become legally obligated to pay as damages . . . .";
> (b)  The costs incurred and paid or to be incurred by [Campbell] Estate do not constitute "damages because of bodily injury or property damage";
> . . . .
> (f)  The costs incurred and paid or to be incurred by [Campbell] Estate do not result from or involve a "suit against the insured[.]"

[Complaint at ¶ 30.]  The Counter-Motion seeks a finding in favor of U.S. Fire on those coverage defenses.  [Counter-Motion at 2.] It seeks "summary judgment that it owes no duty to indemnify Campbell [Estate] for the clean-up costs paid pursuant to the EPA Orders because no 'suit' was filed and/or there are no 'damages' that Campbell was 'legally obligated to pay' because of 'property damage.'"  [Id. at 12.]

Campbell Estate's Occurrence Motion addresses coverage defense (c) - "The costs incurred and paid or to be incurred by [Campbell] Estate were not caused by an 'occurrence' within the meaning of The U.S. Fire Policies;" - and defense (d) - "The costs incurred and paid or to be incurred by [Campbell] Estate were not caused by an 'occurrence' taking place during the policy periods of The U.S. Fire Policies[.]" [Complaint at ¶ 30.]  The Occurrence Motion also seeks a finding regarding U.S. Fire's

claim that the qualified pollution exclusion negates coverage.[7]
[Mem. in Supp. of Occurrence Motion at 9.]  Campbell Estate notes
that U.S. Fire contends that the Policies contain an absolute or
total pollution exclusion, but the Occurrence Motion does not
seek a finding on the absolute or total pollution exclusion.
[Id. at 11 n.3.]

**DISCUSSION**

**I.   Applicable Law Regarding Insurance Contract Interpretation**

Federal jurisdiction in this case is based on
diversity.  [Complaint at ¶ 2.]  This district court has
recognized that:

> Federal courts sitting in diversity apply
> state substantive law and federal procedural law.
> See Mason & Dixon Intermodal, Inc. v. Lapmaster
> Int'l LLC, 632 F.3d 1056, 1060 (9th Cir. 2011)
> ("When a district court sits in diversity, or
> hears state law claims based on supplemental
> jurisdiction, the court applies state substantive
> law to the state law claims."); Zamani v. Carnes,
> 491 F.3d 990, 995 (9th Cir. 2007) ("Federal courts
> sitting in diversity jurisdiction apply state
> substantive law and federal procedural law."
> (quotations omitted)).  When interpreting state
> law, a federal court is bound by the decisions of
> a state's highest court.  Trishan Air, Inc. v.
> Fed. Ins. Co., 635 F.3d 422, 427 (9th Cir. 2011).
> In the absence of a governing state decision, a
> federal court attempts to predict how the highest
> state court would decide the issue, using
> intermediate appellate court decisions, decisions
> from other jurisdictions, statutes, treatises, and

---

[7] Paragraph 30.(g) of the Complaint alleges: "The costs
incurred and paid or to be incurred by [Campbell] Estate are
excluded from coverage by The U.S. Fire Policies' applicable
pollution exclusions[.]"

restatements as guidance.  Id.; see also
Burlington Ins. Co. v. Oceanic Design & Constr.,
Inc., 383 F.3d 940, 944 (9th Cir. 2004) ("To the
extent this case raises issues of first
impression, our court, sitting in diversity, must
use its best judgment to predict how the Hawaii
Supreme Court would decide the issue." (quotation
and brackets omitted)).

Estate of Rogers v. Am. Reliable Ins. Co., Civil No. 10-00482

SOM/RLP, 2011 WL 2693355, at *3 (D. Hawai`i July 8, 2011).  This

Court therefore looks to Hawai`i state law for the applicable

principles of insurance contract interpretation.

**A.    General Principles under Hawai`i Law**

The Hawai`i Supreme Court has set forth the following

principles applicable in the interpretation of insurance

contracts:

> [I]nsurers have the same rights as
> individuals to limit their liability and to impose
> whatever conditions they please on their
> obligation, provided they are not in contravention
> of statutory inhibitions or public policy.  As
> such, insurance policies are subject to the
> general rules of contract construction; the terms
> of the policy should be interpreted according to
> their plain, ordinary, and accepted sense in
> common speech unless it appears from the policy
> that a different meaning is intended.  Moreover,
> every insurance contract shall be construed
> according to the entirety of its terms and
> conditions as set forth in the policy.
>     Nevertheless, adherence to the plain language
> and literal meaning of insurance contract
> provisions is not without limitation.  We have
> acknowledged that because insurance policies are
> contracts of adhesion and are premised on standard
> forms prepared by the insurer's attorneys, we have
> long subscribed to the principle that they must be
> construed liberally in favor of the insured and
> any ambiguities must be resolved against the

9

insurer.  Put another way, the rule is that
policies are to be construed in accord with the
reasonable expectations of a layperson.

Guajardo v. AIG Hawai`i Ins. Co., Inc., 118 Hawai`i 196, 201-02,

187 P.3d 580, 585-86 (2008) (alteration in Guajardo) (quoting

Dairy Rd. Partners v. Island Ins. Co., 92 Hawai`i 398, 411-12,

992 P.2d 93, 106-07 (2000)).  The Hawai`i Supreme Court has also

stated: "[t]he objectively reasonable expectations of

[policyholders] and intended beneficiaries regarding the terms of

insurance contracts will be honored even though painstaking study

of the policy provisions would have negated those expectations.

These 'reasonable expectations' are derived from the insurance

policy itself . . . ."  Del Monte Fresh Produce (Hawaii), Inc. v.

Fireman's Fund Ins. Co., 117 Hawai`i 357, 368, 183 P.3d 734, 745

(2007) (citations and some quotation marks omitted) (some

alterations in original).

     Under the principles of general contract

interpretation, "[a] contract is ambiguous when the terms of the

contract are reasonably susceptible to more than one meaning."

Airgo, Inc. v. Horizon Cargo Transport Inc., 66 Haw. 590, 594,

670 P.2d 1277, 1280 (1983).

          It is well settled that courts should not draw
          inferences from a contract regarding the parties'
          intent when the contract is definite and
          unambiguous.  In fact, contractual terms should be
          interpreted according to their plain, ordinary
          meaning and accepted use in common speech.  The
          court should look no further than the four corners
          of the document to determine whether an ambiguity

> exists.  Consequently, the parties' disagreement
> as to the meaning of a contract or its terms does
> not render clear language ambiguous.

State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Hawai`i

315, 324, 978 P.2d 753, 762 (1999) (citations omitted).

## B.   **Duty to Defend & Duty to Indemnify**

This district court has summarized the following

relevant aspects of Hawai`i law regarding the duty to defend and

the duty to indemnify.

> The burden is on the insured to establish
> coverage under an insurance policy.  See Sentinel
> Ins. Co. v. First Ins. Co. of Haw., 76 Haw. 277,
> 291 n.13, 875 P.2d 894, 909 n.13 (1994) (as
> amended on grant of reconsideration); Crawley v.
> State Farm Mut. Auto. Ins. Co., 90 Haw. 478, 483,
> 979 P.2d 74, 79 (App. 1999).  The insurer has the
> burden of establishing the applicability of an
> exclusion.  See Sentinel, 76 Haw. at 297, 875 P.2d
> at 914.
> The duty to indemnify is owed "for any loss
> or injury which comes within the coverage
> provisions of the policy, provided it is not
> removed from coverage by a policy exclusion."
> Dairy Road Partners v. Island Ins., 92 Haw. 398,
> 413, 922 P.2d 93, 108 (2000).  The obligation to
> defend an insured is broader than the duty to
> indemnify.  The duty to defend arises when there
> is any potential or possibility for coverage.
> Sentinel, 76 Haw. at 287, 875 P.2d at 904; accord
> Haole v. State, 111 Haw. 144, 151, 140 P.3d 377,
> 384 (2006) ("if there is no potential for
> indemnification, then no duty to defend will
> arise").  However, when the pleadings fail to
> allege any basis for recovery under an insurance
> policy, the insurer has no duty to defend.
> Pancakes of Hawaii, Inc. v. Pomare Props. Corp.,
> 85 Haw. 286, 291, 994 P.2d 83, 88 (Haw. Ct. App.
> 1997)).  In other words, for [the insurer] to have
> no duty to defend, it must prove that it would be
> impossible for a claim in the underlying lawsuit
> to be covered by the policy.  See Tri-S Corp. v.

11

W. World Ins. Co., 110 Haw. 473, 488, 135 P.3d 82, 97 (2006).

Estate of Rogers, 2011 WL 2693355, at *4.  The Hawai`i Supreme Court has emphasized that the duty to defend applies even if the possibility of coverage is "remote".  Tri-S Corp. v. W. World Ins. Co., 110 Hawai`i 473, 488, 135 P.3d 82, 97 (2006).  Further, "[a]ll doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured."  Id.

"[T]he duties to defend and indemnify arise under the terms of the insurance policy, and it is through an interpretation of the terms of the policy that such duties are deemed to be owed."  Del Monte, 117 Hawai`i at 369-70, 183 P.3d at 746-47 (citation omitted).

## II.  Relevant Provisions of the Policies

At the outset, the Court must address U.S. Fire's argument that the Court should deny Campbell Estate's Suit Motion and Occurrence Motion because Campbell Estate failed to submit copies of the Policies with their concise statements of fact. Instead, Campbell Estate submitted a letter dated October 13, 2009 to Campbell Estate's counsel from Janet Malay, who is with U.S. Fire's counsel - Crum & Forster, informing Campbell Estate of U.S. Fire's response to the tender of the defense in the EPA Actions ("Coverage Letter").  [McHenry Suit Decl., Exh. K; Campbell Estate's Separate and Concise Statement of Material Facts in Supp. of Occurrence Motion, filed 6/6/11

12

(dkt. no. 71) ("Campbell Estate Occurrence CSOF"), Decl. of Patricia J. McHenry ("McHenry Occurrence Decl."), Exh. K.]  U.S. Fire contends that Campbell Estate cannot carry its burden on its summary judgment motions because of its failure to submit copies of the Policies themselves.  This Court, however, notes that U.S. Fire does not contest the authenticity of the Coverage Letter, nor does it dispute the accuracy of the Coverage Letter's discussion of the Policies at issue.  Further, U.S. Fire has submitted copies of the Policies as exhibits in support of its Counter-Motion, and Ms. Malay submitted a declaration authenticating the copies of the Policies.  In light of the importance of the issues raised in Campbell Estate's motions and the fact that there is no evidence that Campbell Estate acted in bad faith or intended to delay the proceedings by submitting the letter in lieu of copies of the Policies themselves, this Court would have given Campbell Estate notice and time to correct the problem before denying the motions for failure to submit copies of the Policies.  Such a procedure, however, would have been futile in the instant case because copies of the Policies at issue are already in the record.  The Court therefore rejects U.S. Fire's argument that the Court should deny Campbell Estate's motions based on Campbell Estate's failure to submit copies of the Policies at issue.  The Court now turns to the relevant provisions of the Policies.

13

Policy Numbers LV806-9513, LV812-0551, MP 817-7108, SV877-2416, and the primary portion of Policy No. SV859-2335 ("the Primary Policies") have the same insuring agreement:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>     Coverage A - bodily injury, or
>     Coverage B - property damage
> to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the injured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient . . . .

[Decl. of Janet Malay in Supp. of Counter-Motion, filed 11/14/11 (dkt. no. 123) ("Malay Counter-Motion Decl."), Exh. 1 (Liability Policy No. LV806-9513) at 11 (emphases omitted); U.S. Fire Concise Statement of Material Facts in Supp. of Counter-Motion, filed 11/14/11 (dkt. no. 120-1) ("U.S. Fire Counter-Motion CSOF"), No. 5 (stating that the Primary Policies have the same insuring agreement); Campbell Estate's (1) Response to U.S. Fire's Responsive Suit CSOF and (2) Response to U.S. Fire's Counter-Motion CSOF, filed 11/21/11 (dkt. no. 128) ("Campbell Estate Reply/Counter-Motion CSOF"), at ¶ 1 (admitting, *inter alia*, U.S. Fire Counter-Motion CSOF No. 5).]

Similarly, Policy Numbers SV859-2335, 812-0429, and LC817-7271 ("the Umbrella Policies") state, in pertinent part:

> With respect to any occurrence covered by the terms and conditions of this policy, but not

14

> covered, as warranted, by the underlying
> policies . . . or not covered by any other
> underlying insurance collectible by the insured,
> the Company shall:
>> (a) defend any suit against the insured
> alleging such injury or destruction and seeking
> damages on account thereof, even if such suit is
> groundless, false or fraudulent[.]

[Malay Counter-Motion Decl., Exh. 4 (Policy No. SV859-2335) at 137; U.S. Fire Counter-Motion CSOF No. 8 (stating that insuring agreements in the Umbrella Policies have the same duty to defend); Campbell Estate Reply/Counter-Motion CSOF at ¶ 1 (admitting, *inter alia*, U.S. Fire Counter-Motion CSOF No. 8).]

The Primary Policies and the Umbrella Policies have the same definition of "property damage", which

> means (1) physical injury to or destruction of
> tangible property which occurs during the policy
> period, including the loss of use thereof at any
> time resulting therefrom or (2) loss of use of
> tangible property which has not been physically
> injured or destroyed provided such loss of use is
> caused by an occurrence during the policy period.

[Malay Counter-Motion Decl., Exh. 1 (Liability Policy No. LV806-9513) at 8 (emphases omitted); U.S. Fire Counter-Motion CSOF No. 7 (stating that the Primary Policies and the Umbrella Policies have the same definition of property damage); Campbell Estate Reply/Counter-Motion CSOF at ¶ 1 (admitting, *inter alia*, U.S. Fire Counter-Motion CSOF No. 7).]

Neither the term "suit" nor the term "damages" is defined in the definitions sections of the Primary Policies or the Umbrella Policies.  [Malay Counter-Motion Decl., Exh. 1

15

(Liability Policy No. LV806-9513) at 7-8, Exh. 2 (Liability

Policy No. LV812-0551) at 49-50, Exh. 3 (Commercial Package

Policy No. MP817-7108) at 69, Exh. 4 at 137-39 (Policy No. SV859-

2355, Commercial Umbrella Policy part), Exh. 5 (Liability Policy

No. SV877-2416) at 185-86, Exh. 6 (Comprehensive Catastrophe

Policy No. LC812-0429) at 291-92, Exh. 7 (Commercial Umbrella

Policy No. LC817-7271) at 311-12.]

    Policy Number LV806-9513 states that an "'occurrence'

means an accident, including continuous or repeated exposure to

conditions, which results in bodily injury or property damage

neither expected nor intended from the standpoint of the

insured[.]"  [Id., Exh. 1 at 7 (emphases omitted).]  Policy

Numbers LV812-0551, MP817-7108, SV859-2355 (both primary, general

liability part and umbrella coverage part), and SV877-2416 have

the same or a substantially similar definition.  [Id., Exh. 2 at

49, Exh. 3 at 69, Exh. 4 at 124 & 139, Exh. 5 at 185.]  The

Contamination and Pollution endorsement for Comprehensive

Catastrophe Policy No. LC812-0429 states, in pertinent part, "for

the purpose of this endorsement 'Occurrence' means a continuous

or repeated exposure to conditions which unexpectedly and

unintentionally causes injury to persons or tangible property

during the policy period."  [Id., Exh. 6 at 294.]

16

Policy Number LV806-9513 contains the following exclusion, which the parties refer to as the "qualified pollution exclusion":

This insurance does not apply:
. . . .
(f)  to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental[.]

[Malay Counter-Motion Decl., Exh. 1 at 11 (emphases omitted).] Policy Numbers LV812-0551, MP817-7108, SV859-2355 (primary, general liability), SV877-2416, and LC817-7271 contain the same or a substantially similar exclusion.  [Id., Exh. 2 at 53, Exh. 3 at 70, Exh. 4 at 127 & 139, Exh. 5 at 189, Exh. 7 at 312.]  These policies do not define the term "sudden".  [Id., Exh. 1 at 7-8, Exh. 2 at 49-50, Exh. 3 at 69, Exh. 4 at 137-39, Exh. 5 at 185-86, Exh. 7 at 311-12.]

## III. **Occurrence Motion**

The Hawai`i Supreme Court has recognized that, in general,

An "occurrence policy" provides coverage if the event insured against (the "occurrence") takes place during the policy period, irrespective of when a claim is presented.  Annotation, Event as Occurring Within Period of Coverage of "Occurrence" And "Discovery" Or "Claims Made" Liability Policies, 37 A.L.R. 4th 382, 390 (1985).

17

Under a "claims made" or "discovery" policy, coverage is triggered by the presentation of a claim during the policy term regardless of when the event insured against took place.  Id.; see also Trizec [Props., Inc. v. Biltmore Constr. Co.], 767 F.2d [810,] 812 n.3 [(11th Cir. 1985)].  The parties agree that, under an occurrence policy, the event that triggers potential coverage is the sustaining of actual damage by the complaining party and not the date of the act or omission that caused the damage.  Trizec, 767 F.2d at 812; 11 Couch on Insurance 2d, § 44:8 at 194 (Rev. ed. 1982).  Simply stated, the relevant focus under an occurrence policy is on the effect, not the cause.

Sentinel Ins. Co. v. First Ins. Co. of Hawai`i, 76 Hawai`i 277, 288, 875 P.2d 894, 905 (1994).

## A.    Qualified Pollution Exclusion

In the Occurrence Motion, Campbell Estate asserts that the applicability of the "qualified pollution exclusion" is U.S. Fire's "primary defense".  [Mem. in Supp. of Occurrence Motion at 21.]  Campbell Estate argues that the "qualified pollution exclusion" became standard in comprehensive general liability ("CGL") policies in 1973, and some members of the insurance industry represented to state insurance regulators at the time that the exclusion did not limit coverage under "occurrence" based policies, but merely clarified that pollution was covered as long as it was not intentional.  [Id. at 15-16 (some citations omitted) (citing Queen City Farms, Inc. v. Central Nat'l Ins. Co. of Omaha, 882 P.2d 703, 721-22 (Wash. 1995); Joy Technologies, Inc. v. Liberty Mut. Ins. Co., 421 S.E.2d 493, 499 (W. Va.

18

1992)).] Campbell Estate also contends that courts have held that property damage results from an "occurrence" as long as the insured did not intentionally damage the property. [Id. at 17-18 (some citations omitted) (citing Hecla Mining Co. v. New Hampshire Ins. Co., 811 P.2d 1083, 1088 (Colo. 1991); MAPCO Alaska Petroleum, Inc. v. Central Nat'l Ins. Co. of Omaha, 795 F. Supp. 941, 947-48 & n.2 (D. Alaska 1991)).] Campbell Estate contends that, while Chem-Wood's practices were apparently "sloppy", there is no evidence that the environmental contamination was intentional. Moreover, the issue is whether **Campbell Estate** intended to damage the Site, and it clearly did not intend to do so because it was not aware of Chem-Wood's conduct which caused the contamination. [Id. at 18-19.]

The applicability of the qualified pollution exclusion turns on the interpretation of the word "sudden". Campbell Estate argues that "sudden" has multiple meanings, the most common meaning being "unexpected", but the term can also have a temporal meaning - immediate or abrupt. [Id. at 21.] Campbell Estate therefore argues that the term is ambiguous and must be interpreted in favor of the insured under Hawai`i principles of insurance contract interpretation. [Id. at 22.] Campbell Estate cites a number of cases stating that the term "sudden" is ambiguous. [Id. at 25-27 (some citations omitted) (citing In re Tutu Water Wells Contamination Litig., 78 F. Supp. 2d 456, 466

(D.V.I. 1999); <u>Public Service Co. of Colorado v. Wallis and Companies</u>, 986 P.2d 921, 933 (Colo. 1999); <u>St. Paul Fire & Marine Ins. Co. v. McCormick & Baxter Creosoting Co.</u>, 923 P.2d 1200, 1218 (Or. 1996); <u>Queen City Farms, Inc. v. Central Nat'l Ins. Co. of Omaha</u>, 882 P.2d 703, 721 (Wash. 1994)).] Campbell Estate emphasizes that, at the time the qualified pollution exclusions in the relevant Policies were drafted, the phrase "sudden and accidental" was understood to mean "unexpected and unintended." [<u>Id.</u> at 28-29 (citing <u>Alabama Plating Co. v. United States Fid. & Guar. Co.</u>, 690 So. 2d 331, 336 (Ala. 1997); <u>St. Paul Fire & Marine Ins. Co. v. McCormick & Baxter Creosoting Co.</u>, 923 P.2d 1200, 1218 (Or. 1996)).]

Campbell Estate also argues that the Policies are ambiguous in that they do not state from whose perspective the incidents must have been "sudden and accidental". Campbell Estate argues that "Hawaii law dictates that the perspective of **the insured** must govern the determination of whether coverage exists." [<u>Id.</u> at 32 (emphasis in original) (citing <u>AIG Hawaii Ins. Co. v. Estate of Caraang</u>, 74 Haw. 620, 636, 851 P.2d 321, 329 (1993)).] Campbell Estate emphasizes that the Hawai`i Supreme Court has applied this rule to CGL policies. [<u>Id.</u> at 34 (citing <u>Hawaiian Holiday Macadamia Nut Co. v. Industrial Indem. Co.</u>, 76 Hawai`i 166, 170, 872 P.2d 230, 234 (1994)).] Thus, Campbell Estate argues that, because Campbell Estate did not

expect or intend the releases of pollutants on the Site, U.S. Fire cannot carry its burden of proving that the qualified pollution exclusion precludes coverage.  [Id. at 37-38.]

U.S. Fire emphasizes that the term "occurrence" is expressly defined in each policy.  Although the Policies have slightly different wording, "they all require either an 'accident' or an 'accident or event' which results in property damage 'neither expected nor intended from the standpoint of the insured.'"  [Mem. in Opp. to Occurrence Motion at 11 (citing McHenry Decl., Ex. K, pp. 4, 6-7).]  U.S. Fire argues that both the Hawai`i Supreme Court and the Ninth Circuit have held that such provisions are unambiguous and enforceable, precluding the duty to defend and/or the duty to indemnify.  Thus, the Court must ignore the treatises and out-of-state authorities that Campbell Estate cited in support of its position.  [Id. (citing Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 947 (9th Cir. 2004) ("In Hawaii, an occurrence 'cannot be the expected or reasonably foreseeable result of the insured's own intentional acts or omissions." (quoting Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co., 76 Haw. 166, 170, 872 P.2d 230, 234 (1994)); Hawaiian Ins. & Guar. Co., Ltd. v. Blanco, 72 Haw. 9, 804 P.2d 876 (1990), (overruled on other grounds); AIG Haw. Ins. Co. v. Caraang, 74 Haw. 620, 636, 851 P.2d 321, 329, (1993)).]

U.S. Fire argues that the qualified pollution exclusion is unambiguous and requires an abrupt and unexpected release. Thus, no extrinsic evidence may be considered to create an ambiguity in the policy terms. [Id. at 17-18.]  Second, there is no evidence that U.S. Fire was among the insurers who represented to state insurance regulators that the term "sudden" had a special meaning.  [Id. at 18 (citing ACL Technologies. Inc. v. Northbrook Property and Cas. Ins. Co., 17 Cal. App. 4th 1773, 1792 (Cal. Ct. App. 1993) (rejecting evidence of drafting history because, among other reasons, "there was no evidence that this insurance company . . . ever represented to this policyholder . . . that despite what the ordinary person might think about the relationship between gradual and sudden, in this particular policy the word 'sudden' would have some special meaning in contradiction to that relationship.") (emphasis in original)).]  Third, the Ninth Circuit, interpreting California law and Arizona law, has rejected Campbell Estate's proposed interpretation of "sudden." [Id. 18-19 (citing Smith v. Hughes Aircraft Co., 22 F.3d 1432 (9th Cir. 1993)).]  U.S. Fire argues that the "majority" of federal courts addressing this issue have reached the same conclusion.  [Id. at 21-22 (citing SnyderGeneral Corp. v. Century Indem. Co., 907 F. Supp. 991, 996-997 & fn.7 (N.D. Tex. 1995) (listing the federal "majority of cases" holding that the term "sudden" contains a temporal component)).]  In

22

addition, other courts have recognized that "sudden" is unambiguous and has a temporal meaning. [Id. at 22 & n.9 (citing cases).]

As previously noted, this Court is sitting in diversity and is bound by the decisions of the Hawai`i Supreme Court. The Hawai`i Supreme Court has not addressed the meaning of the term "sudden" as used in qualified pollution exclusions such as those at issue in this case. Although the Hawai`i courts have been confronted with other insurance policy exclusions that also used the phrase "sudden and accidental", those decisions have not addressed the meaning of the term "sudden". See, e.g., Hurtig v. Terminix Wood Treating & Contracting Co., 5 Haw. App. 247, 249, 685 P.2d 799, 801 (Ct. App. 1984); Sturla, Inc. v. Fireman's Fund Ins. Co., 67 Haw. 203, 208-09, 684 P.2d 960, 963 (1984). The Hawai`i Supreme Court, however, has addressed the meaning of the term "accidental" in the context of the definition of "occurrence" in a CGL policy.

> The question of what is an "accident" must be determined by addressing the question from the viewpoint of the insured. This court has addressed this question previously in AIG Hawaii Insurance Co., Inc. v. Caraang:
> "[I]f the insured did something or . . . failed to do something, and the insured's expected result of the act of omission was the injury, then the injury was not caused by an accident and therefore not . . . within the coverage of the policy . . . ." [Hawaiian Ins. & Guar. Co. v.] Blanco, 72 Haw. [9] at 16, 804 P.2d [876] at 880 [(1990)] (insured fired rifle in victim's direction, intending

> to frighten but instead injuring him; injury
> held to be reasonably foreseeable and
> therefore not accidental from insured's
> viewpoint; consequently, insurer had no duty
> to defend); see also [Hawaiian Ins. & Guar.
> Co. v.] Brooks, 67 Haw. [285] at 292, 686
> P.2d [23] at 27-28 [(1984)] (from perspective
> of insured truck driver, sexual assault of
> hitchhiker in rear section of vehicle by
> insured's co-worker not accidental where
> insured aware of attack but chose not to do
> anything to prevent or mitigate harm to
> victim, thereby facilitating commission of
> act; insurer held to have no duty to defend
> or indemnify).
> * * * * * *
> The teaching of Blanco and Brooks, however,
> is that, in order for the insurer to owe a
> duty to defend or indemnify, the injury
> cannot be the expected or reasonably
> foreseeable result of the insured's own
> intentional acts or omissions.
>
> 74 Haw. 620, 635-636, 851 P.2d 321, 329 (1993).

Hawaiian Holiday Macadamia Nut Co., Inc. v. Industrial Indem.

Co., 76 Hawai`i 166, 170, 872 P.2d 230, 234 (1994) (alterations

in Hawaiian Holiday).

U.S. Fire contends that, because the Hawai`i Supreme

Court has held that "accidental" means unexpected and unintended,

"sudden" cannot also mean unexpected and unintended.  The Hawai`i

Supreme Court has stated:

> We have long expressed our disapproval of
> interpreting a contract such that any provision be
> rendered meaningless.  See Reed & Martin, Inc. v.
> City & County of Honolulu, 50 Haw. 347, 349, 440
> P.2d 526, 528 (1968) (interpreting contract so as
> not to render a clause of the contract
> meaningless); Richards v. Ontai, 19 Haw. 451,
> 453-54 (1909) (construing terms of lease so as not
> to render a clause of the lease meaningless).  See
> also Restatement (Second) of Contracts § 203

24

> ("[A]n interpretation which gives a reasonable,
> lawful, and effective meaning to all the terms is
> preferred to an interpretation which leaves a part
> unreasonable, unlawful, or of no effect[.]");
> Candlelight Props., LLC v. MHC Operating Ltd.
> P'ship, 750 N.E.2d 1, 17 (Ind. Ct. App. 2001)
> (explaining that in interpreting the rights and
> duties under a promissory note and a mortgage, the
> court "make[s] all attempts to construe the
> language in a contract so as not to render any
> words, phrases, or terms ineffective or
> meaningless").  While SCD's interpretation would
> render either the word "claim" or the word "right"
> superfluous, UH/HL's interpretation would give
> effect to both words.  Thus, the circuit court did
> not err in ruling that the Agreement encompasses
> "claims" asserted by SCD and not merely "claims of
> offset."

Stanford Carr Dev. Corp. v. Unity House, Inc., 111 Hawai`i 286,

297-98, 141 P.3d 459, 470-71 (2006) (alterations in Stanford

Carr).

Arguably, pursuant to the general rules of contract

construction, "sudden" cannot mean unexpected and unintended as

the insured - Campbell Estate - advocates because applying that

definition would render the term "accidental" superfluous or

meaningless.  In contrast, applying the time-based definition of

"sudden" that the insurer - U.S. Fire - advocates would give

effect to both words.[8]  The Hawai`i Supreme Court, however, has

stated "adherence to the plain language and literal meaning of

insurance contract provisions is not without limitation."

---

[8] For example, Merriam Webster's Collegiate Dictionary 1248
(11th ed. 2005) defines "sudden" as abrupt or "brought about in a
short time".

Guajardo v. AIG Hawai`i Ins. Co., Inc., 118 Hawai`i 196, 202, 187 P.3d 580, 586 (2008) (citation and block quote format omitted). Because insurance contracts are contracts of adhesion based on form contracts that the insurers' attorneys prepare, the Hawai`i Supreme Court construes insurance contracts liberally in favor of the insureds and will resolve any ambiguities against the insurer. Id. The Hawai`i Supreme Court will honor the insureds' objectively reasonable expectations even if "painstaking study of the policy provisions would have negated those expectations." Del Monte Fresh Produce (Hawaii), Inc. v. Fireman's Fund Ins. Co., 117 Hawai`i 357, 368, 183 P.3d 734, 745 (2007).

This Court therefore predicts that, if the Hawai`i Supreme Court determined that the "unexpected and unintended" definition of "sudden" was in accord with Campbell Estate's reasonable expectations, the supreme court would hold that the term is ambiguous and construe it against U.S. Fire. Thus, the supreme court would apply that definition even though it arguably renders the term "accidental" superfluous, contrary to the general rules of contract interpretation. Such a ruling would be consistent with the decidedly pro-insured principles set forth in Hawai`i case law. At the current stage of the litigation, however, this Court cannot determine whether the "unexpected and unintended" definition of "sudden" was an objectively reasonable expectation for Campbell Estate because there are genuine of

issues of material fact as to what Campbell Estate expected based on the terms of the Policies in question and the known use of the Site that the Policies insured.  See Fed. R. Civ. P. 56(a). There is also a genuine issue of material fact as to whether Campbell Estate's expectations were consistent with what a layperson would have reasonably expected.  See Guajardo, 118 Hawai`i at 202, 187 P.3d at 586.  The Court also emphasizes that, even if this Court could find at this time that "sudden" means unexpected and unintended, this Court would not grant summary judgment in favor of Campbell Estate because there are genuine issues of material fact as to whether the discharges, dispersals, releases, or escapes of hazardous chemicals on the Site was in fact unexpected and unintended.  In particular, this Court is concerned with the issue whether, in light of Chem-Wood's known use of the Site and Campbell Estate's rights and obligations under the lease, Campbell Estate knew or should have known about Chem-Wood's actions and omissions that allegedly caused the contamination at issue.

The Occurrence Motion seeks a ruling on summary judgment that the qualified pollution exclusions in the relevant Policies do not preclude coverage.  Campbell Estate, however, has not carried its burden of proof on this issue.

B.   __Occurrence__

Similarly, the relevant Policies define an "occurrence"
in terms of what was expected or intended.   See, e.g., Malay
Counter-Motion Decl., Exh. 1 at 7 ("'occurrence' means an
accident, including continuous or repeated exposure to
conditions, which results in bodily injury or property damage
neither expected nor intended from the standpoint of the insured"
(emphases omitted)).   Insofar as there are genuine issues of
material fact as to whether Campbell Estate expected or intended
the contamination that resulted from Chem-Wood's operations,
Campbell Estate has not carried its burden on summary judgment of
establishing that the spills and releases that occurred on the
Site during Chem-Wood's operations constitute "occurrences" for
purposes of the Policies at issue in this case.

Campbell Estate's Occurrence Motion is therefore DENIED
WITHOUT PREJUDICE.

IV.   __Campbell Estate's Suit Motion and U.S. Fire's Counter-Motion__

In the Suit Motion, Campbell Estate seeks rulings that
the following U.S. Fire coverage defenses do not preclude
coverage under the relevant Policies: the costs incurred or to be
incurred by Campbell Estate as a result of the EPA Actions do not
result from or involve a "suit against the insured"; the costs
incurred or to be incurred by Campbell Estate as a result of the
EPA Actions are not "sums which the insured shall become legally

obligated to pay as damages"; and the costs incurred or to be incurred by Campbell Estate as a result of the EPA Actions do not constitute "damages because of . . . property damage". [Mem. in Supp. of Suit Motion at 22, 25, 28.]  In the Counter-Motion, U.S. Fire seeks rulings on summary judgment that those provisions preclude any duty to indemnify Campbell Estate for the costs associated with the EPA Actions.

A.   **Suit**

Campbell Estate recognizes that no party has filed a judicial complaint regarding the Site contamination, but Campbell Estate argues that the EPA Actions constitute a "suit" under the relevant Policies because the EPA Actions are the functional equivalent of a lawsuit.  U.S. Fire argues that the primary definition of the term "suit" is a civil action, and U.S. Fire emphasizes that the Policies do not refer to "the functional equivalent of a suit".

There is no dispute that: the EPA issued the PRP Letter and the FRD; Campbell Estate, the EPA, and the current owner of the Site entered into the AOC; and Campbell Estate incurred costs as a result of the PRP Letter, the FRD, and the AOC.  Thus, the parties agree that the interpretation of the term "suit", as used in the Policies, is a legal issue that is appropriate for summary judgment.  They also agree that there is no controlling Hawai`i

case law and that the jurisdictions which have addressed this issue are split.

In addressing whether, under Idaho law, an EPA PRP notice triggered the duty to defend, the Ninth Circuit stated:

> Unlike the garden variety demand letter, which only exposes one to a potential threat of future litigation, a PRP notice carries with it immediate and severe implications. Generally, a party asserting a claim can do nothing between the occurrence of the tort and the filing of the complaint that can adversely affect the insureds' rights. However, in a CERCLA case, the PRP's substantive rights and ultimate liability are affected from the start of the administrative process. Avoidable Industries, Inc. v. Travelers Indem. Co., 697 F. Supp. 1314, 1321 (S.D.N.Y. 1988) ("Adverse consequences can befall an insured during the administrative pollution cleanup process."), aff'd, 887 F.2d 1200 (2d Cir. 1989).
> The extent of CERCLA liability is far-reaching. The ability to choose the response action greatly empowers the government. In order to influence the nature and costs of the environmental studies and cleanup measures, the PRP must get involved from the outset. In many instances, it is more prudent for the PRP to undertake the environmental studies and cleanup measures itself than to await the EPA's subsequent suit in a cost recovery action.
> There are many incentives to cooperate with the EPA. For instance, pursuant to 42 U.S.C. § 9607(c)(3), if a person who is liable for a release or threat of release of a hazardous substance fails to "properly provide removal or remedial action upon order of the President, pursuant to section 9604 or 9606 of this title," the EPA can choose to proceed with a Superfund-financed cleanup, and then seek punitive damages. Lack of cooperation may expose the insured, and potentially its insurers, to much greater liability, including the EPA's litigation costs.
> As a result, an "ordinary person" would believe that the receipt of a PRP notice is the

effective commencement of a "suit" necessitating a
legal defense.  The PRP letter forced [the
insured] to hire technical experts and lawyers to
protect its interests in connection with EPA's
actions.  Moreover, if the receipt of a PRP notice
is held not to trigger the duty to defend under
CGL policies, then insureds might be inhibited
from cooperation with the EPA in order to invite
the filing of a formal complaint.
    . . . .
    We hold that the EPA's administrative claims
against the insureds triggered insurers' duty to
defend.  Coverage should not depend on whether the
EPA may choose to proceed with its administrative
remedies or go directly to litigation.  A
fundamental goal of CERCLA is to encourage and
facilitate voluntary settlements.  Interim
Guidance on Notice Letters, Negotiations, and
Information Exchange, EPA Memorandum, 53 Fed. Reg.
5298 (1988).  It is in the nation's best interests
to have hazardous waste cleaned up effectively and
efficiently.  But the insured is not required to
submit to, and may in fact wish to oppose the
threat.  In either event, the insurer's duty to
defend may well be triggered.
    Further, we do not agree with insurers'
complaints of obliteration of a bright-line test.
The rationale behind defending insureds when a
complaint has been filed is that, traditionally,
that is when the jeopardy to the insureds' rights
can be adversely affected.  The focus should be on
the underlying rationale and not on the
formalistic rituals.  If the threat is clear then
coverage should be provided.  The filing of an
administrative claim is a clear signal that legal
action is at hand.

Aetna Cas. & Sur. Co. v. Pintlar Corp., 948 F.2d 1507, 1516-18

(9th Cir. 1991).  In addition, this district court has previously

rejected a defendant's argument that a State of Hawai`i

Department of Health proceeding regarding environmental pollution

was not a "suit" for purposes of the insurer's duty to defend.

Pac. Emp'rs Ins. Co. v. Servco Pac., Inc., 273 F. Supp. 2d 1149,

1156-57 (D. Hawai`i 2003).  The district court stated that it was "convinced that Hawaii courts would adopt the majority rule as followed in Pintlar, 948 F.2d at 1516-17."  Id. at 1156 (citing cases following the majority rule).

U.S. Fire argues that Pacific Employers is not persuasive because: the district court merely adopted the "majority" rule without analyzing the policy language, which is inconsistent with Hawai`i law regarding the interpretation of insurance policies; the case only addressed the issue in the context of the duty to defend, not the duty to indemnify; the case relied on Pintlar, which is based on Idaho law; and this district court reached the opposite result in CIM Insurance Corp. v. Masamitsu, 74 F. Supp. 2d 975 (D. Hawai`i 1999).  [Mem. in Supp. of Counter-Motion at 15 & n.4.]

U.S. Fire also argues that the term "suit" is not ambiguous, and California courts have recognized that an EPA claim is not a suit triggering the duty to defend or indemnify. U.S. Fire contends that "California contract interpretation law is strikingly similar to Hawaii law."  [Id. at 16 (discussing Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co., 18 Cal. 4th 857 (Cal. Sup. Ct. 1998)).]  U.S. Fire argues that the Policies at issue in the instant case "make the same intentional distinctions" as the policies at issue in Foster-Gardner.  [Id. at 18.]  U.S. Fire also rebuts Campbell Estate's assertion that

the majority rule is that EPA claims are suits.  U.S. Fire argues that, in most states, there is no settled law on the issue, and many states which have contract interpretation rules identical to Hawaii's have held that PRP letters or other similar letters from state agencies are not suits.  [Id. at 19-20 (some citations omitted) (citing Patrons Oxford Mut. Ins. Co. v Marois, 573 A.2d 16, 20 (Me. 1990); Aetna Cas. & Sur. Co. v. General Dynamics Corp., 968 F.2d 707, 713-714 (8th Cir. 1992) (applying Missouri law); Joslyn Manufacturing Co. v. Liberty Mut. Ins. Co., 836 F. Supp. 1273 (W.D. La. 1993)).]

        First, the Court rejects U.S. Fire's argument that Pintlar is inapplicable because it addressed the meaning of the term "suit" in the context of the duty to defend and not the duty to indemnify.  U.S. Fire does not explain how or why, based on the language of the relevant insuring agreements in the instant Policies, the term "suit" would have a different meaning in the context of the duty to defend than it has in the context of the duty to indemnify.  Further, Pacific Employers is not inconsistent with CIM Insurance.  The district court in CIM Insurance ruled that a demand letter threatening to file suit did not trigger a duty to defend.  74 F. Supp. 2d at 986.  This Court also notes that the policy in CIM Insurance contained an express definition of "suit".  Id. ("'Suit' means a civil proceeding in which damages because of 'bodily injury' of [sic, or] 'property

damages' to which this insurance applies are alleged. 'Suit' includes an arbitration proceeding alleging such damages to which you must submit or submit with our consent." (alteration in CIM Ins.) (block quote format omitted)). The policy at issue in Pacific Employers, like the Policies at issue in the instant case, did not contain a definition of "suit". 273 F. Supp. 2d at 1157. Pacific Employers expressly distinguished CIM Insurance on those grounds and concluded that CIM Insurance did not apply. Id. The district court in Pacific Employers also declined to apply Foster-Gardner, which was cited in CIM Insurance. Id. at 1156-57.

Finally, the Court need not address which rule is the majority rule and which rule is the minority rule. Although this Court acknowledges that Pintlar is not directly on point because it applies Idaho law, this Court agrees with the district court in Pacific Employers that the Hawai`i Supreme Court would adopt the rule followed in Pintlar. In Pintlar, the Ninth Circuit noted that "an 'ordinary person' would believe that the receipt of a PRP notice is the effective commencement of a 'suit' necessitating a legal defense." 948 F.2d at 1517. As noted previously, the Hawai`i Supreme Court will honor an insured's objectively reasonable expectations even if "painstaking study of the policy provisions would have negated those expectations." Del Monte, 117 Hawai`i at 368, 183 P.3d at 745.

34

This Court therefore CONCLUDES that the Hawai`i Supreme
Court would hold that the EPA Actions in the instant case
constitute "suits" for purposes of the Policies at issue in this
case.  Campbell Estate's Suit Motion is GRANTED and U.S. Fire's
Counter-Motion is DENIED to the extent that this Court rules that
U.S. Fire cannot deny coverage on the ground that the EPA Actions
are not "suits" for purposes of the relevant Policies.[9]

**B.**    **Damages**

Pintlar also held that CERCLA response or clean-up
costs were "damages" under the insurance policies at issue.  948
F.2d at 1513.  Campbell Estate argues that this is the majority
rule and urges the Court to follow this rule.  [Mem. in Supp. of
Suit Motion at 23-24 (citing cases).]  U.S. Fire argues that
Hawai`i law on this issue is unsettled.  [Mem. in Supp. of
Counter-Motion at 21 (citing Pacific Employers Ins. Co. v. Servco
Pacific Industries, 273 F. Supp. 2d at 1149).]  U.S. Fire urges
the Court to look to California law, under which environmental
clean-up costs to comply with an agency order do not constitute
"damages".  [Id. (citing Certain Underwriters at Lloyd's of
London v. Sup. Ct. (Powerine Oil Co. Inc.), 24 Cal. 4th 945 (Cal.
Sup. Ct. 2001) ("Damages" is limited to money ordered by the

---

[9] The Court emphasizes that its ruling is limited to the
legal definition of the term "suit" as used in the Policies, and
the Court expresses no opinion as to the implications that this
conclusion will have on the factual issues in this case.

court.)).]  U.S. Fire emphasizes that other states have also held the same.  [Id. at 22 (some citations omitted) (citing Zurich Ins. Co. v. Cams Corp., 293 Ill. App. 3d 906, 908-910 (Ill. Ct. App. 1997); Cincinnati Ins. Co. v. Milliken & Co., 857 F.2d 979 (4th Cir. 1988) (applying South Carolina law); Continental Ins. Co. v. Northeastern Pharmaceutical & Chem. Co., 842 F.2d 977 (8th Cir. 1988) (en banc) (Missouri law)).]

For the same reasons discussed *supra* regarding the definition of "suit", this Court CONCLUDES that the Hawai`i Supreme Court would follow the rule stated in Pintlar and would hold that the costs that Campbell Estate has incurred, or will incur, as a result of the EPA Actions constitute "damages" for purposes of the Policies at issue in this case.  Campbell Estate's Suit Motion is GRANTED and U.S. Fire's Counter-Motion is DENIED to the extent that this Court rules that U.S. Fire cannot deny coverage on the ground that the costs incurred, or that will be incurred, by Campbell Estate as a result of the EPA Actions are not "damages" under the relevant Policies.[10]

C.   **Property Damage**

Campbell Estate's Suit Motion asserts that the clean-up costs it incurred, and will incur, as a result of the EPA Actions

---

[10] The Court emphasizes that its ruling is limited to the legal definition of the term "damages" as used in the Policies, and the Court expresses no opinion as to the implications that this conclusion will have on the factual issues in this case.

constitute damages because of "property damage".  The term
"property damage" is expressly defined in the Policies, and the
parties apparently agree that environmental pollution constitutes
"property damage" as defined in the Policies.  In the Counter-
Motion, U.S. Fire argues that Campbell Estate is not entitled to
summary judgment regarding U.S. Fire's coverage defense
addressing "property damage" because, at a minimum, there are
genuine issues of material fact regarding whether the property
damage occurred during the periods covered by the Policies.  This
Court agrees with U.S. Fire that: the EPA Orders only establish
that the Site is contaminated, they do not constitute proof that
the contamination occurred during the periods covered by the
Policies; and there are genuine issues of material fact regarding
the reports that Campbell Estate submitted as evidence of when
and how the contamination to the Site occurred, see Campbell
Estate Suit CSOF, Decl. of Christopher Vais, Exhs. A & B;
Quesinberry Decl, Exh. G.  Summary judgment, in favor of either
party, is therefore not appropriate at this time.[11]

  Campbell Estate's Suit Motion and U.S. Fire's Counter-
Motion are DENIED WITHOUT PREJUDICE as to the issue whether the

---

[11] Although it is not clear from the Counter-Motion, which
also constitutes U.S. Fire's opposition to the Suit Motion,
whether U.S. Fire seeks a ruling that the property damage did not
occur during the period covered by the Policies, to the extent
that the Counter-Motion does seek such relief, U.S. Fire has not
met its burden of proof on summary judgment.

property damage to the Site occurred during the periods covered by the relevant Policies.

## CONCLUSION

On the basis of the foregoing, the Court HEREBY rules as follows: Campbell Estate's Motion for Partial Summary Judgment Regarding Policy Terms "Suit," "Damages," and "Property Damage", filed June 6, 2011, is HEREBY GRANTED IN PART AND DENIED IN PART; Campbell Estate's Motion for Partial Summary Judgment Regarding Qualified Pollution Exclusion and Occurrence Defenses, filed June 6, 2011, is HEREBY DENIED WITHOUT PREJUDICE; and U.S. Fire's Counter-Motion for Partial Summary Judgment Re: No Duty to Indemnify Estate of James Campbell Because No "Suit" and No "Damages", filed November 14, 2011, is HEREBY DENIED.

Campbell Estate's Suit Motion is GRANTED and U.S. Fire's Counter-Motion is DENIED to the extent that this Court rules that U.S. Fire cannot deny coverage on the following grounds: the EPA Actions are not "suits" for purposes of the relevant Policies; and the costs incurred, or that will be incurred, by Campbell Estate as a result of the EPA Actions are not "damages" under the relevant Policies. Campbell Estate's Suit Motion and U.S. Fire's Counter-Motion are DENIED WITHOUT

PREJUDICE as to the issue whether the property damage to the Site occurred during the periods covered by the relevant Policies.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, December 29, 2011.



_/s/ Leslie E. Kobayashi_____
Leslie E. Kobayashi
United States District Judge

**UNITED STATES FIRE INSURANCE COMPANY V. ESTATE OF JAMES CAMPBELL, ET AL.; CIVIL NO. 11-00006 LEK-KSC; ORDER GRANTING IN PART AND DENYING IN PART THE ESTATE OF JAMES CAMPBELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING POLICY TERMS "SUIT," "DAMAGES," AND "PROPERTY DAMAGE"; DENYING THE ESTATE OF JAMES CAMPBELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING QUALIFIED POLLUTION EXCLUSION AND OCCURRENCE DEFENSES; AND DENYING UNITED STATES FIRE INSURANCE COMPANY'S COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT RE: NO DUTY TO INDEMNIFY ESTATE OF JAMES CAMPBELL BECAUSE NO "SUIT" AND NO "DAMAGES"**